# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1929

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARTIN CALDWELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 899—**Suzanne B. Conlon**, *Judge.*

ARGUED APRIL 15, 2005—DECIDED SEPTEMBER 12, 2005

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* A grand jury charged Martin Caldwell in September 2003 with two counts of being a felon in possession of firearms. Caldwell proceeded to trial and was convicted on both counts. The district court sentenced him to 57 months' imprisonment. On appeal, Caldwell challenges the sufficiency of the evidence, two evidentiary rulings by the district court, and his sentence. We affirm his conviction and order a limited remand with respect to his sentence in accordance with the procedure outlined in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

## I. Background

Caldwell's most recent contact with the police stemmed from the August 1998 kidnapping of his mother. Caldwell called the police for assistance when the kidnappers demanded a ransom of $250,000 in cash. Though Caldwell told the kidnappers that he could not obtain that much cash, he made several phone calls and raised approximately $100,000 in less than an hour.[1] The ransom was dropped off at a prearranged location, Caldwell's mother was released, and the kidnapping went unsolved. During the incident, Caldwell informed police that he lived at 4758 S. Lawler Avenue in Chicago.

The circumstances of the kidnapping, including Caldwell's ability to raise a substantial amount of cash in a short period of time despite apparently limited means, led the police to investigate Caldwell. Police had been conducting surveillance of Caldwell's home when Mario Young, an associate of Caldwell's, was arrested on heroin charges on September 17, 1998. When arrested, Young was driving a Ford Crown Victoria with 76 grams of heroin in a hidden compartment. Young informed the police that he got the drugs and the car from Caldwell. He also told the police that he had brought Caldwell $10,000 the prior day as

---

[1] Caldwell argues at various points in his brief that the record does not support a finding that Caldwell paid $100,000 in ransom for his mother's release. We disagree. The detective that assisted Caldwell with the ransom drop testified that Caldwell informed the kidnappers that he could not raise $250,000, but that he could come up with $100,000. Tr. 54. Though the detective did not count the money, he said that there were "bundles of money" delivered to the kidnappers in a shoebox. Tr. 55. In any event, the point is that Caldwell raised a very large sum of cash in short order; it does not matter whether it was $100,000 or a little less. Whatever the precise amount, it was enough to satisfy kidnappers who had initially demanded $250,000.

partial payment for the heroin, and that Caldwell had been supplying him with heroin for approximately six months. Armed with the information provided by Young and a number of other indications of involvement in the illegal drug trade, such as the suspicious circumstances surrounding the kidnapping and the fact that Caldwell had ten vehicles registered in his name despite reporting very limited income on his tax returns, federal agents applied for a search warrant of Caldwell's home. A magistrate judge granted the application, and the ensuing search of Caldwell's residence conducted on September 18, 1998, turned up three guns, ammunition, approximately $57,000 in cash, and marijuana. Specifically, a loaded .45 handgun with an obliterated serial number was found inside a bedroom nightstand drawer, and a nine-millimeter handgun and a two-shot derringer were found inside a secret compartment of a Monte Carlo parked in the garage.

On September 17, 2003, Caldwell was charged with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922. Caldwell filed two pre-trial motions that are relevant to this appeal. First, on Fourth Amendment grounds, he moved to suppress the evidence found during the search of his home. The district court denied the motion. Second, Caldwell filed a motion *in limine* to exclude any evidence of prior drug dealing and any evidence about the kidnapping of his mother. In response, the government agreed not to offer evidence about drug dealing, but argued that evidence regarding the kidnapping was relevant because it gave him a motive to possess firearms. The district court agreed and allowed the government to present evidence about the kidnapping.

Caldwell decided to test the government's evidence at trial. The parties stipulated to the fact that Caldwell had a prior felony conviction. In addition, it was largely undisputed that the firearms found at the Lawler residence had traveled in interstate commerce. As a result, the primary

issue for trial was whether Caldwell possessed the firearms in question. The jury sided with the government on the issue, convicting Caldwell on both counts. The district judge sentenced him to 57 months' imprisonment, which represented the top of the applicable guidelines range. This appeal followed.

## II. Discussion

### A. Sufficiency of the Evidence

Caldwell first challenges the sufficiency of the government's evidence against him. When adjudicating a sufficiency of the evidence challenge, we will overturn a conviction "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). This burden is "nearly insurmountable." *United States v. Johnson*, 127 F.3d 625, 628 (7th Cir. 1997).

To obtain a conviction under 18 U.S.C. § 922(g)(1), the government bore the burden of establishing beyond a reasonable doubt that: (1) Caldwell had a previous felony conviction; (2) he possessed the firearms in question; and (3) the firearms traveled in or affected interstate commerce. *United States v. Alanis*, 265 F.3d 576, 591 (7th Cir. 2001). Caldwell concedes that the government carried its burden with respect to the first and third elements, but asserts that no rational trier of fact could find that he possessed the firearms.

"Possession may be either actual or constructive." *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). Because Caldwell was not in actual physical possession of the guns when his home was searched, the parties agree that the government had to prove constructive possession in this case. "Constructive possession exists when a person knowingly has the power and the intention at a given time to

exercise dominion and control over an object, either directly, or through others." *United States v. Quilling*, 261 F.3d 707, 712 (7th Cir. 2001).

The government introduced ample evidence to support a finding that Caldwell had constructive possession of the guns seized at 4758 S. Lawler. Indeed, the record reflects that: (1) the defendant owned the house where the weapons were found and had stated on previous occasions that he lived there; (2) Mario Young, who visited the defendant occasionally, testified that the defendant lived at 4758 S. Lawler; (3) the defendant's car was parked outside the residence on the day agents seized the firearms; (4) closing documents for the defendant's refinancing on the property indicated that the defendant was the sole borrower and the primary owner of the residence; (5) agents found recent utility bills addressed to the defendant at the Lawler address; (6) the defendant had furniture, dressers, a television set, bed, nightstand, clothing, numerous pairs of gym shoes, and food inside the residence; and (7) shortly before the time period charged in the indictment, Mario Young had seen the defendant with the same nine millimeter handgun later seized by government agents. The foregoing evidence provided the jury with a rational basis to conclude that the 4758 S. Lawler home was Caldwell's residence at the time in question, which is sufficient to establish that he had constructive possession of the firearms seized there. *Kitchen*, 57 F.3d at 521 ("Constructive possession can be established by a showing that the firearm was seized at the defendant's residence.").

Caldwell also argues that the evidence was deficient in light of a statute of limitations problem. He points out that he was indicted on September 17, 2003, for firearms seized on September 18, 1998, dangerously close to the applicable five-year statute of limitations. 18 U.S.C. § 3282. The general rule is that the government may prove the offense conduct on any day before the indictment and

within the statute of limitations. *United States v. Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988). In this case, the government had to establish that Caldwell constructively possessed the firearms on either September 17, 1998 or September 18, 1998, as those were the only days within the limitations period that were also prior to the indictment and the seizure of the firearms. The indictment, however, was not that specific; Caldwell was charged with possessing the firearms "on or about September 18, 1998." In addition, the district court instructed the jury that the date of possession could be "reasonably close to [the date charged] but [the government] is not required to prove the alleged offenses happened on that exact date." Caldwell does not challenge the instruction; he contends only that the instruction "makes it cloudy on which date the jury did in fact rely."

We think that the indictment and jury instruction should have been more specific to assure that the jury would focus on whether he constructively possessed the weapons on dates within the limitations period. Nevertheless, Caldwell's argument fails to account for the heavy deference we give jury verdicts. We only overturn a jury verdict "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Fiore*, 178 F.3d 917, 924 (7th Cir. 1999). The pre-limitations period evidence, such as the evidence about the kidnapping and Young's testimony that he saw Caldwell with the nine millimeter in his lap, constituted probative circumstantial evidence that Caldwell had dominion and control of the firearms on either September 17 or 18, and the evidence that Young resided in the 4758 S. Lawler residence also indicated that Caldwell constructively possessed the guns on those dates. Although it is possible the jury decided the case in an impermissible fashion, that possibility exists in every case and we give jurors the benefit of the doubt unless

"no rational juror could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002). Because Caldwell has not demonstrated that to be the case here, we reject his sufficiency of the evidence challenge.

## B. Admission of Evidence of Kidnapping

Caldwell next argues that the district court committed reversible error by admitting evidence about the kidnapping of his mother. According to Caldwell, the kidnapping evidence was both irrelevant and unduly prejudicial. Specifically, Caldwell asserts that "[n]othing about Caldwell's mother's kidnapping, three weeks before the charged crime, points to a motive for the defendant to possess a gun." App. Brief at 26. Caldwell also maintains that the evidence is inadmissible under Rule 404(b) because it was offered to show that Caldwell was a rich drug dealer. We disagree.

The primary dispute at trial was whether Caldwell constructively possessed the guns that were seized at his home. Under Rule 401 of the Federal Rules of Evidence, any evidence that tended to make Caldwell's possession of the guns more or less probable was relevant evidence. The fact that Caldwell's mother had been kidnapped three weeks before Caldwell was charged with being a felon in possession gave him a strong motive to possess the firearms found in his home. Specifically, the circumstances of the kidnapping indicated that Caldwell had access to large sums of money and that the unidentified assailants knew about it. This surely gave Caldwell a reason to fear for his own safety, the safety of his family, and the security of his assets, making it more probable that he possessed the guns in question. As the government notes, this motive theory was confirmed by Young's testimony at trial that Caldwell told him that he had a gun because "my mama just got

kidnapped and the stick-up men have been to my house."
Tr. 74-75.

Caldwell's arguments to the contrary are unpersuasive.
For example, he argues that the gap between the kidnap-
ping and firearms charges made the evidence too stale to be
relevant. Yet the gap was only three weeks and the kidnap-
pers were still at large, which means that Caldwell still had
a motive to carry firearms. He also maintains that the
evidence was inadmissible "other act" evidence under Rule
404(b) in that it portrayed him as a wealthy drug dealer.
But even if the evidence could be viewed as Rule 404(b)
evidence, other act evidence is admissible under 404(b) to
establish proof of motive, which was exactly why the
evidence was offered. At any rate, any such prejudice was
minimized by the government's agreement not to present
evidence of Caldwell's drug dealing at trial and the district
court's limiting instruction that there was nothing wrong or
illegal about Caldwell paying a ransom for his mother's
release. For the above stated reasons, we conclude that the
evidence regarding Caldwell's mother's kidnapping was
relevant and not unfairly prejudicial. The district court did
not abuse its discretion in admitting the evidence.

## C.  Motion to Suppress

Caldwell also advances a Fourth Amendment challenge to
the district court's denial of his motion to suppress the
evidence seized during the government's September 18,
1998, search of his home. The district court rejected his
claim for two independent reasons. First, given that
Caldwell's home was for sale at the time of the search and
Caldwell's reluctance to admit that the house was his
because he planned to argue that he did not possess the
firearms found there, the court concluded that Caldwell
lacked standing to challenge the search because he had
failed to establish that he had a reasonable expectation of

privacy in the house. In the alternative, the court concluded that the search warrant affidavit was sufficient to establish probable cause under relevant Fourth Amendment principles. We express no opinion on the standing issue and affirm the trial court on the ground that the affidavit was supported by probable cause. *United States v. Funches*, 327 F.3d 582, 586 n.3 (7th Cir. 2003).

Prior to issuing a search warrant, a magistrate judge must determine whether probable cause exists for doing so. *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). The probable cause determination involves "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether an affidavit established probable cause is reviewed *de novo*. *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005).

We have little difficulty concluding that the affidavit in this case was supported by probable cause. The affidavit provided the following information as a basis for the probable cause finding: (1) the defendant owned the property in question; (2) a vehicle registered to the defendant was observed parked outside the residence; (3) the defendant had two previous convictions for possession of a controlled substance; (4) the defendant had inexplicably raised $100,000 in less than one hour as ransom for his mother's kidnapping; (5) the defendant had 10 registered vehicles in his name; (6) the defendant filed income tax returns ranging from only $1,589 to $22,534; (7) a confidential informant identified the defendant from a photo as a drug dealer; (8) another confidential informant informed government agents that the defendant had recently showed him how to operate a secret compartment inside of a car, which contained 270 grams of heroin; (9) the second confidential informant brought $10,000 to the defendant's

residence as payment for the heroin; (10) the second informant stated that the defendant had been providing him with heroin for six months; and (11) law enforcement agents observed the defendant in the car with the secret compartment in late August or early September.

Caldwell takes the divide and conquer approach to the information laid out in the affidavit in his attempt to portray the circumstances as innocuous. However, as the government observes, that approach misses the point because the decision is based on the totality of the circumstances. For instance, the access to cash and cars, standing alone, is not suspicious. But add Caldwell's very limited income to the equation, and the lifestyle becomes a bit suspicious. Consider those facts together with his prior controlled substance convictions, the statements of two confidential informants that Caldwell was dealing drugs, and particularly the statement of one informant, arrested the day before with 76 grams of heroin in his car, that he bought the drugs from Caldwell at the Lawler address and had been obtaining drugs from Caldwell for six months, and the circumstances become very suspicious. In this case, the sum of the probable cause circumstances was greater than their individual parts and was more than enough to establish a fair probability that contraband or evidence of a crime would be found at Caldwell's home. We accordingly reject Caldwell's Fourth Amendment challenge.[2]

---

[2] Caldwell also takes issue with the lower court's denial of his request for a *Franks* hearing to explore the validity of the search warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The issue does not warrant extended discussion because Caldwell does not come close to establishing the requisite substantial preliminary showing that the affidavit contained a material false statement or omission that was necessary to support the finding of probable cause. *Id*.

**D. Sentencing**

The district court grouped the counts of Caldwell's conviction together pursuant to U.S.S.G. § 3D1.2(b), arriving at a base offense level of 14. U.S.S.G. § 2K2.1(a)(6). Due to enhancements for possession of three firearms, possession of a firearm with an obliterated serial number, and possession of a firearm in connection with another felony offense, Caldwell's adjusted offense level was 21. That offense level, coupled with Caldwell's criminal history category of III, yielded a sentencing range of 46 to 57 months, and the district court sentenced him to 57 months. On appeal, Caldwell asserts that the district court erred in enhancing his sentence pursuant to its finding that he possessed the firearms in connection with another felony offense. He further asserts that the district court unconstitutionally enhanced his sentence on the basis of factual findings that were neither admitted nor proven to a jury beyond a reasonable doubt. *United States v. Booker*, 125 S.Ct. 738 (2005).[3] We address each claim in turn.

Caldwell's presentence report ("PSR") recommended enhancing his sentence 4 levels because he possessed the firearms in connection with drug trafficking. *See* U.S.S.G. § 2K2.1(b)(5) ("If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."). Caldwell objected to the enhancement, asserting that the firearms seized had no potential to facilitate illegal drug activity. Because the

---

[3] In his reply brief, Caldwell argues that the due process clause prevents the district court from increasing his sentence beyond what it would have been prior to the Supreme Court's decision in *Booker*. We rejected a materially indistinguishable argument in *United States v. Jamison*, 416 F.3d 538 (7th Cir. 2005), and see no need to reconsider that decision or add to its analysis.

weapons were found in close proximity to drugs, drug proceeds, and reported drug activity, the district court overruled Caldwell's objection to the PSR recommendation and applied the 4-level enhancement. Caldwell renews the objection on appeal, arguing that the firearms were not connected to drug trafficking. The district court's determination on this issue was a mixed question of law and fact and is reviewed for clear error. *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996). "A factual determination is clearly erroneous only if, after considering all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id.* (citations omitted).

Caldwell's challenge to the § 2K2.1(b)(5) enhancement is without merit. As we have observed in past cases, the "in connection with" requirement is usually met where the seized firearms are found in close proximity to drugs, drug paraphernalia, and other obvious indications of drug trafficking. *United States v. Patterson*, 97 F.3d 192, 195 (7th Cir. 1996) (affirming application of enhancement where marijuana and firearms found in same trunk); *Wyatt*, 102 F.3d at 247-48 (affirming application of enhancement where weapons found in home where defendant distributed and stored drugs, and in close proximity to drug ledgers and drug packaging materials); *United States v. Ewing*, 979 F.2d 1234, 1238 (7th Cir. 1992) ("The seizure of a firearm in close proximity to illegal drugs is considered powerful support for the inference that the firearm was used in connection with the drug trafficking operation."). As in the cited cases, the proximity factor permitted the inference in this case that the firearms were possessed in connection with drug trafficking. The nine-millimeter handgun, the two-shot derringer, and $57,000 cash were found inside a secret compartment of a Monte Carlo parked in Caldwell's garage. Young testified by affidavit that Caldwell had used the same secret compartment for storage of drugs, making it

likely that the $57,000 cash was drug proceeds. In addition, marijuana was found in Caldwell's Lawler Avenue residence along with the loaded .45 handgun. Furthermore, Young reported that Caldwell had been distributing heroin from his home on Lawler. Given these circumstances, it was not clearly erroneous for the district court to conclude that Caldwell possessed the seized firearms in connection with drug trafficking.

Caldwell is correct that the district court's factual findings and corresponding sentencing enhancements ran afoul of the Sixth Amendment principles explained in *Booker*. He did not bring this issue to the district court's attention by objecting on the basis of the Sixth Amendment or *Apprendi v. New Jersey*, 530 U.S. 466 (2000), at sentencing. This forfeiture means that we may only correct error if he demonstrates that it was plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *United States v. Olano*, 507 U.S. 725, 732-37 (1993). In *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we explained that the plain error analysis as it relates to *Booker* errors depends on whether the district judge would have imposed the same sentence had he known that the guidelines were merely advisory, which is a question that only the sentencing judge can answer. *Id.* at 483-84. Consequently, we will order a limited remand in accordance with the procedure outlined in *Paladino*. *Id.* at 484-85.[4] We will vacate and remand the case for resentencing if the judge states that she would have given Caldwell a different sentence had she known that the guidelines were advisory. *Id.* If, on the other hand, the judge states that she would reimpose the same

---

[4] The fact that the district judge picked a sentence at the top of the applicable range does not rule out the possibility that she may have imposed a lesser sentence had she known the guidelines were advisory. *United States v. Della Rose*, 403 F.3d 891, 907 (7th Cir. 2005).

sentence even under an advisory sentencing regime, we will affirm the original sentence provided that it is reasonable. *Id.*

### III.  Conclusion

For the reasons stated herein, we AFFIRM Caldwell's conviction and order a LIMITED REMAND with respect to his sentence.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*