In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1307

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEMARCO IRBY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 06-10095—**Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 3, 2008—DECIDED MARCH 11, 2009

Before EASTERBROOK, *Chief Judge*, and MANION and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* DeMarco Irby was indicted for possessing with intent to distribute more than five grams of crack in violation of 21 U.S.C. § 841(a)(1). After a two-day trial, a jury found Irby guilty of that offense. Irby appeals his conviction, challenging the sufficiency of the evidence and the admission of several out-of-court statements made by a confidential informant ("CI"). We affirm.

## I.

In its opening statement, the government told the jury that the evidence would show that an officer of the Peoria, Illinois Police Department "received evidence" that Irby was trafficking drugs from 805 East Republic Avenue. The government then called Officer Chad Batterham to testify in its case in chief. Batterham stated that he received information from a CI that a person named DeMarco was selling cocaine from the house at 805 East Republic.[1] The CI then made a controlled buy of a rock of crack cocaine from someone at that residence; Batterham said that the CI identified the seller as "DeMarco." Batterham also testified that the CI later identified the defendant from a photo lineup as the person from whom he had bought the crack. Irby did not object to Batterham's recounting of any of the CI's[2] out-of-court statements.

Officer Batterham then testified that he surveilled the 805 East Republic residence and observed the defendant emerge from the house, feed a dog, and reenter the house. After obtaining a search warrant for Irby and the

---

[1] Just prior to this testimony, defense counsel objected to the government's leading of the witness. The government then gave Batterham an open-ended invitation to describe the circumstances surrounding his surveillance of 805 East Republic. In his first sentence in response, Batterham testified that a CI had informed him that a person named DeMarco was selling cocaine from that address.

[2] The CI was not called to testify at trial.

house, Batterham returned to his surveillance post and watched Irby leave the front porch and go inside the house. A few minutes later, a car driven by Natale Saraceno parked in front of the residence. Batterham stated that he saw Irby emerge from the house, walk to the passenger's side of the car, and lean in the window. A raid team swarmed the area and took Irby into custody near the car. One of the arresting officers testified that he saw Irby take a bag of marijuana out of his pocket and drop it on the ground just before he was arrested. The quantity of marijuana in the bag was worth about ten dollars. A ten-dollar bill was found between the passenger's seat and door of the car.

During the execution of the search warrant for the residence, police officers discovered three surveillance cameras around the front entrance of the house; two monitors with live feeds from these cameras were located in the master bedroom. A scanner set to the Peoria Police Department's frequency was found in the same room. The police found a metal pan of loose marijuana on the bed in the master bedroom, along with several sandwich bags containing marijuana. A plastic grocery bag on the bed contained three digital scales, several bags of marijuana, and another bag holding a couple of bags of marijuana and fifty-nine baggies of crack. The total weight of the crack was 16.9 grams. A drug-trafficking expert testified that the quantity and packaging of the crack was consistent with an intent to distribute. Police found another digital scale near the head of the bed. Irby's state identification card was found on a dresser in the master bedroom and his social

security card was found in a locked box in the bedroom's closet. On a shelf in the same room, police discovered several articles of mail addressed to Irby at 805 East Republic.

Irby did not move for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) when the government rested its case or at the close of all of the evidence. The jury returned a verdict of guilty, specifically finding that Irby possessed with intent to distribute 16.9 grams of crack. Irby did not move for a judgment of acquittal under Rule 29(c) after the verdict was returned. The district court sentenced him to 132 months' imprisonment. Irby appeals his conviction.

## II.

### A. Sufficiency of the Evidence

Irby argues that the evidence presented at trial was insufficient to sustain his conviction on the charged offense. When presented with a challenge to the sufficiency of the evidence, we typically "will reverse a conviction only when no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Knox*, 540 F.3d 708, 719 (7th Cir. 2008). While this standard is "highly deferential" and "nearly insurmountable," *id.*, where, as here, the defendant did not move for a judgment of acquittal in the district court, the even more stringent plain-error standard applies, *United States v. Beaver*, 515

F.3d 730, 741 (7th Cir. 2008). In order to prevail, the defendant must demonstrate that a manifest miscarriage of justice will occur if his conviction is not reversed. *Id.* Put another way, "'reversal is warranted only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking.'" *United States v. Van Allen*, 524 F.3d 814, 819 (7th Cir. 2008) (quoting *Beaver*, 515 F.3d at 741-42).

In order to convict Irby under 21 U.S.C. § 841(a)(1), the government was required to prove that he (1) knowingly or intentionally possessed crack cocaine (2) with the intent to distribute it (3) while knowing it was a controlled substance. *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). The government can prove the first element by demonstrating that the possession was either actual or constructive. *Id.* The defendant is correct when he says that he was never found in actual possession of the crack. That leaves constructive possession, in which case the government must prove Irby had ownership, dominion, or control over the crack, thus establishing a nexus between him and the drugs. *United States v. Parra*, 402 F.3d 752, 761-62 (7th Cir. 2005). "Mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or property on which it is found, is insufficient to support a finding of possession." *United States v. DiNovo*, 523 F.2d 197, 201 (7th Cir. 1975) (internal quotation marks and citation omitted).

Before the raid, Batterham observed the defendant exit and reenter the house after feeding a dog, which sug-

gested he was occupying the house. The presence of Irby's state identification card, social security card, and mail addressed to him in the master bedroom demonstrated that he was living in the room where the marijuana and crack were found. Trial testimony established that the defendant came from the house, walked to Saraceno's car, and attempted to sell marijuana, thus supporting the inference that he was dealing marijuana from the house. A jury reasonably could have inferred that the marijuana the defendant took to the car came from the master bedroom where the crack and marijuana were found and which he was occupying. The fact that the bags of marijuana and the loose marijuana on the bed in the master bedroom were mingled with the baggies of crack supports an inference that the crack and marijuana were owned or controlled by the same person. This evidence was substantial enough to show a nexus between Irby and the crack.[3]

Regarding the intent to distribute element, a government witness testified that the quantity of crack (16.9 grams) was inconsistent with personal use and that its packaging in fifty-nine baggies was consistent with an intent to distribute. The four scales found in the master

---

[3] Irby asserts that the unrebutted testimony of Tameka Edwards and Jonathan Thomas that the marijuana and crack were theirs (respectively) casts doubt on his possession of the crack. The jury heard this testimony and obviously rejected it; on a sufficiency-of-the-evidence challenge, we will not second-guess the jury's credibility determinations. *United States v. Brandt*, 546 F.3d 912, 917 (7th Cir. 2008).

bedroom also suggest that the crack had been prepared for sale rather than personal consumption. This evidence was sufficient to show that Irby intended to distribute the crack.

Irby does not contend that evidence was lacking on the third element—knowledge that the crack was a controlled substance. Even had he made this argument, the surveillance cameras around the front entrance, the live-feed monitors, and the scanner set to the police frequency suggest that Irby wished to avoid detection by law enforcement and were sufficient to permit an inference that he knew that the crack was a controlled substance. *Cf. United States v. Mendoza*, 510 F.3d 749, 752-53 (7th Cir. 2007) (the fact that a defendant required a buyer to go through certain procedures before giving him drugs suggested he was trying to avoid drawing the attention of the authorities and allowed a reasonable jury to infer the defendant knew he was distributing a controlled substance).

For these reasons, we easily conclude that the record is not devoid of evidence of Irby's guilt and that the evidence on each element of the charged offense was not so slight that his conviction is shocking. Accordingly, his challenge to the sufficiency of the evidence fails.

B.  Admission of the CI's Statements

*1. Confrontation Clause*

The defendant argues that the admission of the CI's statements (concerning the identity of the person selling

crack from 805 East Republic) through Batterham's testimony violated his Sixth Amendment right to confront witnesses against him. As we noted earlier, Irby did not object to the introduction of the statements. The initial question is whether this is properly characterized as a waiver or a forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Plain-error review under Federal Rule of Criminal Procedure 52(b) allows us to correct errors which were forfeited in the district court. *Id.* at 731. However, if a right was waived, there was no error and thus even plain-error review is unavailable. *United States v. Babul*, 476 F.3d 498, 500 (7th Cir. 2007). The record shows that Irby simply failed to make a timely assertion of his right; he said nothing to indicate intentional relinquishment or abandonment. This means that there was only a forfeiture, and we can proceed with plain error review.

The plain-error standard comprises three requirements and one discretionary component. *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008). The defendant must show there was 1) an error 2) that was plain 3) that affected his substantial rights. *Olano*, 507 U.S. at 732. If these three conditions are met, we may exercise our discretion to rectify the error but only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted). We often have stated that this last part of the plain-error standard requires a "miscarriage of

justice" before we will reverse. *See, e.g., United States v. Anderson*, 450 F.3d 294, 299 (7th Cir. 2006).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause applies only to hearsay, *see Crawford v. Washington*, 541 U.S. 36, 59-60 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)), that is "testimonial" in nature, *Davis v. Washington*, 547 U.S. 813, 823-25 (2006). In *Crawford*, the Supreme Court held that the Confrontation Clause enables a defendant to bar the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine him. 541 U.S. at 53-54. In *Davis*, the Court said that statements made in the course of a police interrogation are testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. at 822.

Although the CI's statements were probably testimonial hearsay per *Davis*, Irby's counsel may have had good reasons for not objecting to their introduction; nevertheless, we will assume arguendo that their admission was plain error.[4]

---

[4] We have previously suggested that plain-error review is ill-suited for claimed confrontation-clause violations when there

(continued...)

Under the third prong of the plain-error standard, Irby must demonstrate that his substantial rights were affected, i.e., but for any confrontation-clause error the outcome of the trial probably would have been different. *United States v. Prude*, 489 F.3d 873, 880 (7th Cir. 2007). We conclude he cannot make this showing in light of the following overwhelming evidence of his guilt. One of the arresting officers testified that Irby took a bag of marijuana out of his pocket and dropped it on the ground just before he was arrested near Saraceno's car, and a drug-trafficking expert testified that this amount of marijuana was worth ten dollars. The police video that was received into evidence showed the bag on the ground near Irby. The video also showed a ten-dollar bill resting

---

[4] (...continued)

may have been strategic reasons for a defendant not to object to the admission of testimonial hearsay. *United States v. Moon*, 512 F.3d 359, 361 (7th Cir. 2008). In this case, had Irby raised and the district court sustained a confrontation-clause objection to the hearsay statements, the result could have been the live and potentially more forceful testimony of the CI from the witness stand. Faced with this prospect, it may have been to Irby's advantage to let the statements come into evidence through Officer Batterham. In addition, the defendant may have decided that, after the first hearsay statement came into evidence identifying Irby as the person who was selling crack at 805 East Republic, it was best to let it and all similar subsequent statements quietly pass before the jury rather than calling undue attention to them while trying to put the cat back in the bag. Because we decide the case assuming the presence of plain error, we need not speculate further.

between the seat and passenger door of Saraceno's car. Officer Batterham testified that he observed Irby go in and out of the house at 805 East Republic on two separate occasions: one when he fed a dog and the other just before the raid. The video showed that the defendant's state identification card, social security card, and mail addressed to him at 805 East Republic were present in the master bedroom. The video also showed a pan of loose marijuana and several bags of marijuana on the bed in the master bedroom, four scales, and a grocery bag that contained several bags of marijuana and fifty-nine baggies of crack. The three cameras guarding the front of the house were on the video. The monitors located in the master bedroom that were receiving a live-feed from these cameras were also on the video, as was the scanner from the same room that was tuned to the frequency used by the Peoria Police Department. The bag of marijuana that Irby dropped before he was arrested, the ten-dollar bill from Saraceno's car, Irby's state identification card, social security card, and mail addressed to him at 805 East Republic were admitted into evidence, as were the marijuana, 16.9 grams of crack, four scales, two monitors and scanner from the master bedroom, and the three surveillance cameras.

This array of evidence that was presented to the jury was compelling proof that Irby was in the illegal drug business and specifically that he possessed with the intent to distribute more than five grams of crack. Because Irby has not shown that his substantial rights were affected by the admission of the CI's statements, we have

no occasion to exercise our discretion to reverse under the fourth part of the plain-error standard.

### 2. Inadmissible Hearsay

The defendant also claims that the district court erred in admitting the CI's statements because they were inadmissible hearsay under the Federal Rules of Evidence. Irby did not raise this objection at trial, so we review for plain error. Even if these statements were hearsay not covered by any exception and the district court erred in admitting them, for the same reasons stated in our discussion of his confrontation-clause challenge we conclude that such error did not affect Irby's substantial rights.

### III.

Having found that the record is not devoid of proof of Irby's guilt and that the evidence on each element of the charged offense was not so tenuous that his conviction is shocking, we reject his challenge to the sufficiency of the evidence. Because Irby has not shown that his substantial rights were affected by the admission of the CI's out-of-court statements, we need not exercise our discretion to disturb his conviction. We AFFIRM.