In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2341

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRANCE L. KATZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-CR-40053—**Michael M. Mihm**, *Judge.*

ARGUED FEBRUARY 13, 2009—DECIDED SEPTEMBER 22, 2009

Before KANNE, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* The defendant, Terrance Katz, was indicted on multiple counts, including unlawful possession of a firearm by a convicted felon, unlawful possession of ammunition by a convicted felon, possession with intent to distribute marijuana, and unlawful possession of a firearm in pursuance of a drug trafficking crime. A jury convicted him on only one of those counts—unlawful possession of a firearm by a

convicted felon—and failed to reach a verdict on the remaining counts. On that felon-in-possession count, the jury convicted only as to Katz's possession of a Remington 12-gauge shotgun, not as to the other firearm in the count which was a Sturm Ruger Super Blackhawk .44-caliber pistol. The district court denied Katz's motions for judgment of acquittal and his motion for a new trial pursuant to Federal Rule of Criminal Procedure 29 and 33 respectively.

Katz argues on appeal that the evidence was insufficient for a jury to find him guilty beyond a reasonable doubt on the felon-in-possession charge under 18 U.S.C. § 922(g), and that the district court abused its discretion in failing to grant him a judgment of acquittal. We agree and reverse.

In determining whether the evidence is sufficient to support the verdict, we consider the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *United States v. McLee*, 436 F.3d 751, 757 (7th Cir. 2006). The evidence at trial consisted of testimony from several law enforcement agents, a forensic technician, and tapes of two 911 calls, as well as stipulations by the parties. The sequence of events leading to the arrest of Katz began with two 911 calls made by Dawnya Grice on the morning of February 15, 2007. In the first call, Grice informed the dispatcher that her boyfriend, Katz, was threatening her with bodily harm, that he had previously hit her, that she was in a car outside the house because

he had finally allowed her to leave her home, and that she wanted him removed from her home. The dispatcher asked Grice if Katz had any weapons and she stated that he did not. Grice then called 911 again and reported that Katz was now outside her home and that he had a weapon, which she described as a big revolver. She stated that she had initially lied about his possession of a weapon because she assumed he would get rid of it before the police arrived. She then declared that she was unsure whether he currently had it but it appeared that he might be carrying it in his pants. Approximately three minutes into this call, the dispatcher told Grice that the police had stopped Katz as he was walking down the street and that she should return to her home. The police detained Katz a few blocks from Grice's home. A search of Katz revealed no weapons, but the police did find over $1,800 in cash on him. Grice reported to the police that she believed he had also taken her house keys which were on a Nascar keychain, and the police recovered keys matching that description in their search of Katz.

The officers subsequently proceeded to Grice's home and sought her consent to search the home, which she provided. As they were obtaining her consent, one of the detectives saw an unidentified black male descend from the upstairs of the home and quickly exit through the front door. Neither the detective nor any of the officers at the scene were able to detain him, and his identity was never discovered. The subsequent search of the home revealed the following items of interest:

- a box of .44-caliber ammunition, a small mirror with cocaine residue on its surface, and a razor blade above the kitchen cupboard;

- a box containing 75.4 grams of marijuana in 56 individual baggies in the kitchen;

- a Remington 12-gauge shotgun with an attached scope between the mattress and the box springs in an upstairs bedroom;

- a black zippered bag containing 2.2 grams of crack cocaine and "female products" such as makeup and possibly feminine hygiene products in an upstairs bedroom closet;

- a black nylon coat containing .8 grams of crack cocaine in the dining room closet;

- a camouflage backpack containing 4 plastic baggies of marijuana totaling 19.42 grams on a chair in the living/dining room area;

- a loaded .44-caliber Sturm Ruger Super Blackhawk pistol concealed in the ceiling rafters of the basement.

A forensic evidence technician concluded that Katz's fingerprints were on the Remington 12-gauge shotgun and detachable scope found in the mattress of the upstairs bedroom, and on the small mirror found on top of the kitchen cupboard. The technician testified that there was no way of determining how old a fingerprint was, or when a fingerprint was transferred to an object.

The parties stipulated that "Prior to February 15, 2007, the defendant, Terrance L. Katz, had been convicted of a

crime that was punishable by a term of imprisonment of more than one year under the laws of the State of Illinois." The parties also stipulated that Grice had entered into a lease for the property and that she first took possession of the rental property on January 3, 2007. Neither Grice nor Katz testified at the trial.

The felon-in-possession count, 18 U.S.C. § 922(g), on which Katz was convicted prohibited the knowing possession of a Remington 12-gauge shotgun, which had previously traveled in interstate commerce, by a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. In order to convict Katz of that charge, the government was required to prove three elements: (1) Katz had a previous felony conviction; (2) he possessed the Remington 12-gauge shotgun after that conviction; and (3) the firearm had traveled in or affected interstate commerce prior to the time Katz possessed it. The third element and first elements are not contested. Therefore, the issue on appeal is whether there was sufficient evidence for a jury to find beyond a reasonable doubt that Katz possessed the shotgun on February 15, 2007, which was the date of the incident here. That date is the relevant focus because the parties' stipulation only provided that prior to February 15, Katz had been convicted of a crime punishable by imprisonment of more than one year. Accordingly, possession of the shotgun on an earlier date would not establish the second element of the offense.

There is absolutely no evidence, however, that Katz was in physical possession of the shotgun on February 15. The

911 call mentions possession of a revolver, not a 12-gauge shotgun. The only other evidence of physical possession is the testimony of the forensic evidence technician that Katz's fingerprints were found on the shotgun. But the technician also testified that it was not possible to determine how long the fingerprints had been on the shotgun. The prints could have been transferred that day, a month earlier when moving Grice into her new place, or years earlier. The point is that we have nothing but pure speculation as to when Katz was in physical contact with the shotgun. A jury cannot speculate its way out of reasonable doubt. *United States v. Groves*, 470 F.3d 311, 324 (7th Cir. 2006) ("Speculation cannot be the basis for proof in the civil context much less the basis for proof beyond a reasonable doubt.").

We are left, then, with the alternative means of establishing possession—constructive possession. Constructive possession may be established by demonstrating that the defendant knowingly had the power and intention to exercise dominion and control over the object, either directly or through others, thus establishing a nexus between himself and the object. *United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009); *United States v. Rogers*, 542 F.3d 197, 202 (7th Cir. 2008); *United States v. Castillo*, 406 F.3d 806, 812 (7th Cir. 2005). "If a person exercises *exclusive* control over a premises, then constructive possession of a weapon found therein can be inferred." *Castillo*, 406 F.3d at 812. The control over the premises allows the jury to infer the knowledge and intent to control the objects within those premises, and accordingly we have held that constructive possession can be estab-

lished by demonstrating that a firearm was seized at the defendant's residence. *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005); *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir. 1995). Even where a defendant jointly occupies a premise, it is possible to find constructive possession, but the government must provide evidence supporting a nexus between the weapon and the defendant. *Castillo*, 406 F.3d at 813. " 'Mere proximity to the [object], mere presence on the property where it is located, or mere association, without more, with the person who does control the [object] or property on which it is found, is insufficient to support a finding of possession.' " *Irby*, 558 F.3d at 654, quoting *United States v. DiNovo*, 523 F.2d 197, 201 (7th Cir. 1975).

Here, we have nothing more than presence on the property and the fingerprints. There is no evidence whatsoever that Katz resided at the premises, or even that he had ever stayed at the home for any period of time. The only evidence presented indicates that the home belonged to Grice exclusively: the lease was in her name; she did not want to leave him in the home when she left for work; she called police to have him removed from her home; and she possessed the keys. He apparently did not have keys because he took hers when he left the premises. There are none of the indicia of joint possession of the premises that we have found in other cases.

For instance, in *Irby*, 558 F.3d at 654, the court considered whether the defendant had constructive possession of crack cocaine in a house. The defendant was

observed exiting and reentering the house after feeding a dog there which was some indication that he occupied the premises. *Id.* Physical evidence linked him with the master bedroom in which baggies of marijuana and crack cocaine were intermingled. *Id.* Specifically, the master bedroom contained his state identification card, social security card, and mail addressed to him. *Id.* Testimony also established that he came from the house, walked to a car, and attempted to sell marijuana. *Id.* That evidence provided a nexus between the defendant and the object he was charged with possessing. *See also Rogers*, 542 F.3d at 202 (the defendant spent more than 80% of his time living with his girlfriend at the apartment where the firearms were found, he gave the firearms to her, and he knew precisely where they usually were stored); *United States v. Kelly*, 519 F.3d 355, 362 (7th Cir. 2008) (the defendant had keys to the apartment where the drugs and gun were found, gave the apartment as his address, mail addressed to him was found in the room with the contraband, drugs found elsewhere in the apartment were packaged similarly to that at the scene of his arrest, and he referred to the gun and the drugs as belonging to him); *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003) (constructive possession of firearms based in part on the close proximity to the defendant can be proper where the weapon is found in areas over which the defendant exercised control, but could not be established by mere proximity where it is found in the area under an apartment building's entrance stairs—a public area which the defendant did not control). *See also Caldwell*, 423 F.3d at 758; *Castillo*, 406 F.3d at 813.

No such nexus has been established here. No bills, mail or forms of identification in Katz's name were discovered in the home, nor was there testimony that his clothes were found there. In short, we have nothing except his apparently unwelcome visit that day, and the fingerprints on the shotgun. There is no evidence that the fingerprints were made on February 15. Therefore, the prints are relevant only in indicating that he at some point in time had touched the shotgun. There was no testimony that the shotgun belonged to him at any point in time, such as might indicate an awareness of its current location at the house.

The government argues that Katz exercised "dominion and control" over Grice's residence because he was in her house threatening her and for some period of time refused to allow her to leave, and by swiping the keys from the home he could return there at will to retrieve any items. The government further postulates that the $1,800 in cash as well as the fingerprints on the mirror with cocaine residue suggests that Katz controlled the drug business at the home, and that drug dealers often possess guns to protect their drug stash.

First, we note that the journey from cash-in-his-pocket and fingerprints-on-a-mirror to drug-dealer-operating-from-the-house is one that cannot survive the reasonable doubt standard by any conception of it. The cash in his pocket could have been obtained lawfully, could have resulted from drug dealing, or could have been stolen from Grice's home—the home in which the drugs were found. There is simply nothing to

indicate that Katz was a drug dealer operating from the house. The drugs were found throughout the house, not in a central location from which an outsider might operate, and the bag containing crack cocaine in the upstairs bedroom contained "female items." This is nothing but pure speculation, and is not enough to support a criminal conviction.

Moreover, the government's contention that he had dominion and control over the house and its possessions because he was an unwelcome intruder stands constructive possession on its head. The constructive possession standard allows a jury to infer possession from the defendant's relationship with the premises and the objects in it. If it is the defendant's home and his posessions are in the home, then it is a reasonable inference for a jury to attribute the weapons in the home to the defendant as well. Similarly, where the defendant stays at least some of the time at another person's residence and a weapon is found in a room that also contains the defendant's belongings, then a jury may infer possession of the weapon found there as well. That is fundamentally different from an intruder who seizes "control" of a home by force. There is no nexus between the intruder and the home's possession, and no reason for a jury to conclude that the intruder has the knowledge that the weapon is in the home or the intent to exercise dominion or control over it. The constructive possession standard loses all of its grounding if interpreted as the government would so as to include intruders such as Katz. The evidence in this case was not sufficient to support the verdict. Accordingly, the

decision of the district court is REVERSED and the case REMANDED for the district court to enter a judgment of acquittal on that count.