| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with |
| Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 16, 2010[*]
Decided December 16, 2010

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 09-2275

| | |
| --- | --- |
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:08CR30185-001-GPM |
| | |
| LAWRENCE O. DANIELS, | G. Patrick Murphy, |
| *Defendant-Appellant.* | *Judge.* |

**O R D E R**

Following a sting operation, Lawrence Daniels was charged with possessing guns and selling drugs in violation of federal law. Daniels was convicted by a jury on all counts, and he now challenges his convictions and sentence. We affirm.

The drug-distribution charges (counts 1-3) arose from a sting operation conducted by the Bureau of Alcohol Tobacco and Firearms with the help of Yauncey Burrell, a confidential informant. At trial, the government relied primarily on Burrell's testimony

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

regarding three controlled buys he conducted under investigators' supervision. The first controlled buy took place at a residence rented by Daniels's wife on Jefferson Street in East St. Louis, Illinois. Burrell testified that he waited in the living room while Daniels cooked the crack and bagged it. Burrell then purchased the crack from Daniels using $200 in pre-marked ATF funds. Burrell also recounted details of the second and third transactions, which were quick hand-offs carried out through the window of Daniels's car.

An ATF agent testified that the controlled buys were conducted in accordance with agency protocol. Agents had Burrell place recorded calls to Daniels to arrange the meetings; agents searched Burrell before each transaction to confirm that he did not possess any drugs; and agents furnished Burrell with cash and equipped him with a recording device before sending him on his way. From a safe distance, the agents monitored the transactions and eventually recovered from Burrell a substance that lab tests confirmed was crack. The government also introduced audio recordings and photographs of the exchanges. Because the camera was concealed, however, the images revealed less than the agents had hoped for and never captured drugs or money changing hands. Most extensive were the images from the first transaction at the residence on Jefferson, which showed Daniels seated near a pile of cash, making use of what the government identified as utensils for cooking crack cocaine: a glass bowl, a Pyrex dish, and a spoon containing a white substance that appears to be cocaine paste. Among the images from the second controlled buy were the license plate of Daniels's car and the profile of a man resembling Daniels who was gripping a roll of cash. The third video captured a profile of Daniels's face and an image of him holding the cash.

The remaining drug charges (counts four and five) arose from the execution of a search warrant at the residence on Jefferson. A search-team member testified that the agents entered using keys taken from Daniels during his arrest. Those keys opened a bedroom safe in which officers recovered 33.5 grams of crack cocaine (count four) and 142.7 grams of cocaine hydrochloride (count five). The safe also contained two $50 bills whose serial numbers matched those of bills provided to Burrell by the ATF. From the living room the search team found a digital scale and a box of sandwich bags, and elsewhere in the residence they found items that appeared to belong to Daniels, including a shirt bearing his last name, and stacks of mail addressed to him at the Jefferson residence.

Agents also recovered two firearms, one from the bedroom night stand and a second from a living-room sofa, lodged between the cushions. A firearms expert testified that the weapons were made in another state and had traveled in interstate commerce. As additional evidence of possession, the government offered Burrell's testimony that he saw Daniels carrying a black automatic handgun on the street shortly after the first controlled buy.

A jury found Daniels guilty of three counts of distributing crack cocaine, one count of possession with intent to distribute crack cocaine, and one count of possession with intent to distribute cocaine hydrochloride.  21 U.S.C. § 841(a)(1).  The jury also convicted Daniels of one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and one count of possessing a firearm during a drug trafficking crime, *id*. § 924(c)(1)(a).  The district court sentenced him to a total of 430 months' imprisonment.

On appeal, Daniels begins by challenging the sufficiency of the evidence offered to support his distribution convictions.  With each conviction, he asserts, the video recordings do not show an exchange of drugs for money, and the remaining evidence does not permit a reasonable inference that an exchange took place.

The strength of the evidence supporting the distribution convictions makes a sufficiency challenge without merit.  To sustain the convictions, the government had to prove that Daniels knowingly and intentionally distributed a quantity of crack cocaine, and did so knowing it was a controlled substance.  21 U.S.C. § 841(a)(1); *United States v. Graham*, 315 F.3d 777, 781 (7th Cir. 2003).  The government met its burden in this case when it introduced the testimony of Burrell, the confidential informant, who told the jury that he purchased crack from Daniels on three occasions.  Daniels tries to impeach Burrell's credibility on the ground that he was paid in exchange for participating in the controlled buys and has a history of drug use.  But this does not advance Daniels's cause; it was the jury's province to determine whether those factors undermined Burrell's credibility, and we will not set aside a credibility determination unless the testimony of the witness is incredible as a matter of law, *see United States v. Carraway*, 612 F.3d 642, 645 (7th Cir. 2010); *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2007), which is not the case here.  At any rate, the government did not rests its case on Burrell's testimony alone; prosecutors corroborated his statements with testimony from investigators as well as with photographs and audio recordings from the controlled buys.

Daniels next challenges on sufficiency grounds his convictions for possession with intent to distribute crack and cocaine hydrochloride (counts four and five respectively).  Here too the government had to prove that Daniels knowingly and intentionally  possessed crack or cocaine hydrochloride, that he did so with the intent to deliver it, and that he did so knowing it was a controlled substance.  21 U.S.C. § 841(a)(1); *United States v. Johnson*, 592 F.3d 749, 758 (7th Cir. 2010).  In challenging his convictions Daniels argues only that the government failed to prove that the drugs found in the safe were in fact his.  The government's theory at trial, which was supported by the evidence, was that Daniels constructively possessed the drugs as reflected by his exercising control or dominion over the premises in which the drugs were found, even if he did not have actual possession of

the drugs. *See United States v. Lane*, 591 F.3d 921, 926-27 (7th Cir. 2010). Although investigators searched Daniels and did not find drugs, they did find keys to the bedroom safe in which the drugs were recovered. That Daniels had access to the safe supports an inference that he could exercise control over its contents, *see United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010); *United States v. Hinojosa*, 349 F.3d 200, 204 (5th Cir. 2003); *United States v. Gallimore*, 247 F.3d 134, 137 (4th Cir. 2001); *see also United States v. Harris*, 230 F.3d 1054, 1063 (7th Cir. 2000), and by showing that the safe contained pre-marked currency that Daniels received from Burrell during a controlled buy, the government established that Daniels *did* exercise control over its contents.

Daniels next challenges the sufficiency of the evidence supporting his conviction for possessing a firearm as a felon. Under 18 U.S.C. § 922(g)(1), the government must prove that Daniels was a felon who possessed a firearm that traveled in interstate commerce. The only issue is whether a rational jury could find that Daniels constructively possessed the guns. (The parties stipulated at trial that Daniels had been convicted of a felony and there was no dispute that the guns had traveled in interstate commerce.). Although mere presence of contraband in a jointly occupied residence will not support a finding of constructive possession, *see United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009), constructive possession in cases of joint occupancy may be inferred where the item was found in an area over which the defendant exercised control, such as a bedroom or garage, *see United States v. Moses*, 513 F.3d 727, 734 (7th Cir. 2008); *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003); *Untied States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001). Here, one gun was found in the bedroom night stand, near other items belonging to Daniels, and near the safe containing cocaine and ATF cash. A second gun was found between the cushions in the living-room sofa, within arm's reach of where Daniels sat with Burrell during the first controlled buy. A jury could infer from this evidence that Daniels both knew of the guns and could control the areas in which the guns were found. *See United States v. Walls*, 225 F.3d 858, 867 (7th Cir. 2000) (shared bedroom). As further support that Daniels constructively possessed the weapon, the government offered Burrell's testimony that he saw Daniels on the street carrying a firearm that fit the description of the black automatic handgun found in the sofa. *See United States v. Hampton*, 585 F.3d 1033, 1041-42 (7th Cir. 2009) (testimony that defendant was holding gun before entering vehicle supported finding that defendant constructively possessed gun found in vehicle).

Daniels next challenges the sufficiency of the evidence supporting the conviction of possessing a firearm in furtherance of a drug trafficking crime. These facts, however, present a relatively straightforward application of § 924(c)(1)(a): a drug dealer who keeps a gun nearby for protection—either of himself or his stash—uses the weapon "in furtherance" of the drug crime. *See United States v. Mitten*, 592 F.3d 767, 777 (7th Cir. 2010); *United States v. Vaughn*, 585 F.3d 1024, 1029 (7th Cir. 2009). The government proved that Daniels sold

drugs out of his wife's living room, which is precisely where investigators found the loaded gun—between the cushions of the sofa, within arms' reach of the scale and sandwich bags.

We turn next to Daniels's contention that his trial counsel was ineffective in failing to move for dismissal based on the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). The record does not reflect any violation of the act, but even if it did, a claim of ineffective assistance is best saved for collateral review so that a more complete record may be made. *See United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005).

Daniels also argues that the government unlawfully punished him for exercising his Sixth Amendment right to a jury trial by vindictively waiting until the eve of trial to file an information with the court to establish his prior convictions. Daniels, however, must show that the prosecutor was motivated by animus, *see United States v. Segal*, 495 F.3d 826, 832-833 (7th Cir. 2007), and there is nothing inherently vindictive about waiting until the start of trial to file an information, a normal exercise of prosecutorial discretion, *see United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir. 1982).

We can quickly dispose of Daniels's sentencing arguments. First, a challenge to the propriety of a consecutive sentence under 18 U.S.C. § 924(c) is foreclosed by the Supreme Court's recent decision in *Abbott v. United States*, 2010 WL 4569898 at *5 (U.S. Nov. 15, 2010). Next, Daniels challenges on equal-protection grounds the different statutory minimums for powder and crack cocaine under 21 U.S.C. § 841(a)(1), but we have repeatedly rejected similar constitutional challenges. *See United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008); *United States v. Trice*, 484 F.3d 470, 476 (7th Cir. 2007); *United States v. Baker*, 78 F.3d 1241, 1248 (7th Cir. 1996). Finally, Daniels contends that he qualifies for relief under the Fair Sentencing Act, but this law has been held not to apply retroactively, and thus does not bear on Daniels's sentence. *See United States v. Bell*, 2010 WL 4103700 at *10-11 (7th Cir. Oct. 20, 2010).

AFFIRMED.