NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

## For the Seventh Circuit
### Chicago, Illinois 60604

Argued November 7, 2016
Decided November 29, 2016

Before

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

GARY S. FEINERMAN, *District Judge**

| | |
|---|---|
| No. 16-1572 | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | |
| *v.* | No. 3:14CR078-001 |
| MARY RAY, *Defendant-Appellant.* | Jon E. DeGuilio, *Judge*. |

**Order**

The only appellate issue in this criminal case is whether the evidence supports the jury's verdicts that Mary Ray committed wire fraud, 18 U.S.C. §1343, by diverting money from the assets of her elderly father-in-law Norman. Ray also was convicted of embezzling funds from a federal program and making false statements on her tax returns; she does not contest her sentences for those crimes. Imprisonment comes to 84 months in total, allocated across the 11 counts of conviction. Ray did not file a motion for acquit-

---

* Of the Northern District of Illinois, sitting by designation.

tal under Fed. R. Crim. P. 29, so only plain error could lead this court to reverse the wire-fraud convictions. See *United States v. Irby*, 558 F.3d 651, 653 (7th Cir. 2009).

The evidence at trial shows that in 2013 Ray persuaded her father-in-law (then 84 years old) to give her a power of attorney to manage his funds, worth more than $600,000. He did so because he deemed her financially prudent, while he thought his other relatives to be spendthrifts. Ray concealed from Norman the fact that she, too, could not be trusted with money and had recently been fired from her job after being caught embezzling (which she did to cover gambling debts). Ray led Norman to believe that she and her husband "were financially okay"; she did not tell him that the couple had filed for bankruptcy in 2010 and that she was no longer employable.

The power of attorney required Ray to manage Norman's money without compensation, though it allowed her to reimburse reasonable expenses and make herself gifts limited to $10,000 annually. Between March 2013 and October 2014 Ray withdrew about $605,000 from accounts over which Norman and Ray were joint signatories and placed them in accounts subject to her sole control. She then gambled away much of this money, writing checks against these accounts or withdrawing funds from ATMs located in casinos.

A jury could conclude both that Ray hatched a scheme to defraud Norman and that she implemented this scheme using the instrumentalities of interstate commerce, such as the communications lines that permit ATMs to check account balances and dispense cash. The evidence permitted the jury to find that Ray deceived Norman about how she planned to use the money and deliberately exceeded her authority under the power of attorney. Her conduct also permitted the jury to infer that she intended to defraud Norman. Ray asserts that Norman gave her oral permission to use money for her benefit (and her husband's) if it was needed—but Norman, who testified that he could not recall making such a statement and could scarcely recall events from day to day, added that he did not view gambling as a need and would never have authorized either the power of attorney or these withdrawals had Ray told the truth. No more is necessary for conviction. See, e.g., *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004); *United States v. Leahy*, 464 F.3d 773, 787–89 (7th Cir. 2006).

AFFIRMED