**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Diane J. WILLIAMSON, Defendant–Appellant.**

**No. 99–1839.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1999.

Decided Jan. 27, 2000.

Thomas P. Schneider, Mario Gonzales (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellant.

Ann Auberry (argued), Milwaukee, WI, for Defendant–Appellant.

Before RIPPLE, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Diane Williamson was convicted of possession of cocaine with intent to distribute on December 1, 1998, in the United States District Court for the Eastern District of Wisconsin. Her conviction was based on a controlled buy made by an informant working with the FBI and the Menominee Tribal Police. Williamson claims that the district court erred in two evidentiary rulings: its limitation of her cross-examination of the government's cooperating informant and its refusal to admit the testimony of a witness who allegedly would have demonstrated bias in one of the arresting officers. Finding no error, we affirm.

## I. HISTORY

On the evening of May 28, 1998, FBI Special Agent Raymond Greco, Shawano County Sheriff's Deputy Gerald Thorpe and Menominee Tribal Police Officer Dave Waupekenay met an informant, Wendy Waubanascum, in a wooded area of the Menominee Indian Reservation near the city of Neopit. Waubanascum had been working with local law enforcement since 1997 in an ongoing investigation into drug trafficking on the reservation. Prior to May 28, Waubanascum had participated in fifteen to twenty other controlled cocaine buys. Waubanascum was motivated to contribute her services by a criminal investigation into allegations that she furnished minors on the reservation with alcohol and marijuana.

Law enforcement officers searched Waubanascum and her car and gave her eighty dollars in cash to purchase cocaine from Williamson. Officers also gave Waubanascum a tape recorder to capture details of the transaction with Williamson. Under surveillance, Waubanascum traveled to Dee's Rainbow Bar, located south of Neopit. Dee's Rainbow Bar was owned by Williamson's grandmother Delores Yaisey, and Williamson tended bar there. At Dee's Rainbow Bar, Waubanascum tried to find Williamson to make the controlled buy. The doors of the bar were unlocked, but the bar was not open for business. Unable to find Williamson inside, Waubanascum looked for Williamson outside the bar.

Unable to find her outside Dee's Rainbow Bar, Waubanascum drove to Williamson's house trailer, located next door to the bar. There, Yaisey told her that Williamson would be out soon to open up the bar. A short time later, Williamson left her house and approached Waubanascum. Waubanascum asked to purchase two quarter-gram packets of cocaine. Williamson agreed to sell her two packets for fifty dollars, and she removed two packets from a plastic bag attached to the waistband of her underpants. They completed the transaction, and Waubanascum asked Williamson about the possibility of obtaining an "eight-ball" of cocaine in the coming weeks.

Waubanascum then left Williamson and returned to the rendezvous site, where she gave the packets of cocaine and the tape recorder to law enforcement officers. Tribal Police Officer Waupekenay then took Waubanascum's statement and again searched Waubanascum's car. The next day, officers filed a criminal complaint against Williamson. Williamson was arrested on July 30, 1998, and her trial commenced on November 30, 1998.

Williamson hoped at trial to establish bias in Waubanascum by introducing evidence of the activities for which Waubanascum had been investigated—providing alcohol and marijuana to minors on the Menominee Reservation. However, the district court found that this evidence was not relevant to the issue of Waubanascum's bias and granted the government's

motion *in limine* to exclude this evidence. Williamson also hoped to establish bias in Tribal Police Officer Waupekenay. Prior to her arrest, Williamson once had forced other tribal police officers to give Officer Waupekenay a ride home after Waupekenay got drunk at Dee's Rainbow Bar and allegedly made unwanted advances toward her. To establish that Waupekenay harbored bias against her, she sought to introduce the testimony of Marilyn Grignon, who would have testified that Officer Waupekenay approached her and asked her to claim that the incident never occurred if she were ever asked about it by the attorney general. The district court found that this evidence also was irrelevant, and even if relevant, that it would constitute impeachment on a collateral matter, which is also impermissible. Based on the finding that her testimony would present no relevant evidence, the district court refused to allow Grignon to testify.

At trial, Williamson's counsel cross-examined Waubanascum on her motivation for cooperating with law enforcement officers and addressed the criminal investigation of Waubanascum without directly revealing the nature of this investigation. Williamson's counsel cross-examined Waupekenay about his search of Waubanascum, previous occasions when he may have required a ride home from Dee's Rainbow Bar and whether he had ever spoken with Marilyn Grignon about his conduct at the bar. The government presented testimony by the investigating officers and Waubanascum, as well as the recording of the controlled buy taped by Waubanascum. On December 1, 1998, a jury returned a guilty verdict against Williamson. On March 29, 1999, Williamson was sentenced to fifteen months imprisonment with a term of three years supervised release.

## II. ANALYSIS

On appeal, Williamson challenges two of the district court's evidentiary rulings. First, she contends that the district court erred by denying Williamson the opportunity to cross-examine Wendy Waubanascum about the conduct underlying the criminal investigation of Waubanascum. Second, she contends that the district court erred by refusing to admit Marilyn Grignon's testimony into evidence. Williamson argues that both of these errors affected her substantive rights and, therefore, require reversal even if their cumulative effect was harmless in the face of other evidence presented.

### A. Limitation of Cross–Examination

Williamson claims that the district court's limitation of her cross-examination of Wendy Waubanascum violated Williamson's Sixth Amendment right to confrontation. She suggests that had the court allowed Waubanascum to be subject to cross-examination on the details of the investigation against her, the jury might have concluded that Waubanascum slanted her testimony to curry favor with the government and that she had alternate means to obtain cocaine, potentially raising a reasonable doubt that Waubanascum framed Williamson at the request of Officer Waupekenay.

 The Confrontation Clause guarantees the right of the accused to "be confronted with the witnesses against him." U.S. Const. amend. VI. The clause protects a criminal defendant's "right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *see also United States v. Vest*, 116 F.3d 1179, 1186 (7th Cir.1997). The right to cross-examine is not unlimited; the Confrontation Clause guarantees only effective cross-examination, not cross-examination of any type sought by the defendant. *See Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

 Before we consider the merits of Williamson's argument, we must first define the appropriate standard of review. Ordinarily, we review the district court's rulings regarding the scope of cross-examination for abuse of discretion. *See*

*United States v. Jackson,* 51 F.3d 646, 652 (7th Cir.1995). However, Williamson argues that the limitation of her cross-examination of Waubanascum was of such a substantial nature that it effectively "emasculate[d] the right of cross-examination itself." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). In such cases where the Sixth Amendment right to confrontation is directly implicated, we review *de novo. See United States v. Nelson,* 39 F.3d 705, 708 (7th Cir.1994). To distinguish between a permissible level of limitation and one that directly implicates a party's Sixth Amendment rights, we must "distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *Id.*

In this case, Williamson sought to cross-examine Waubanascum in order to impeach her by showing the potential indictment that she faced. Although impeachment is indisputedly a core function of cross-examination, "[l]imiting a party's right to cross-examine for the purposes of impeachment is more a peripheral concern than a 'core value.'" *Jackson,* 51 F.3d at 652; *see also Nelson,* 39 F.3d at 708 (noting that while attacking the credibility of a witness is a core function of cross-examination, "it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury."). Williamson also claims that she sought to elicit an alternative explanation for the narcotics that Waubanascum gave to law enforcement officers. This claim too seems to fall within the broad discretion afforded the trial court to limit the extent and scope of cross examination. *See United States v. Robbins,* 197 F.3d 829, 844 (7th Cir.1999) (applying the abuse of discretion standard to review of testimony excluded pursuant to Fed.R.Evid. 403). Therefore, we review this ruling for abuse of discretion and will reverse if we find that the grant of motion *in limine* affected Williamson's substantive rights. *See United States v. Peak,* 856 F.2d 825, 834 (7th Cir.1988).

Rule 403 of the Federal Rules of Evidence grants the district court broad discretion to limit the scope and extent of cross-examination when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury or the needless presentation of cumulative evidence. Fed. R. Evid. 403. We review the district court's exercise of discretion to determine whether the court provided Williamson with a "reasonable chance" to discredit the witness and pursue her alternative theory of the case. *See Vest,* 116 F.3d at 1186. Williamson contends that the limitation of her cross-examination of Waubanascum restricted her ability to discredit Waubanascum's testimony and develop an alternative theory for Williamson's arrest. However, the court provided Williamson with numerous other avenues to discredit Waubanascum, such as delving into her history of drug use, and allowed Williamson to cross-examine Waubanascumon her motives for cooperating with law enforcement officials. Williamson also established independently through cross-examination that Waubanascum had other ways to obtain cocaine. Thus, the evidence that Williamson hoped to produce by cross-examining Waubanascum about the bases of the investigation against Waubanascum would have been, at best, needlessly cumulative. We find that Williamson was able to present a "reasonably complete picture of [Waubanascum's] veracity, bias, and motivation," *United States v. Saunders,* 166 F.3d 907, 919 (7th Cir.1999), and that the district court did not abuse its discretion by granting the government's motion *in limine* restricting the scope of her cross-examination.

### B. Exclusion of Testimony

Williamson also claims that the district court's exclusion of Marilyn Grignon's testimony violated her right to compulsory process and her fundamental due process rights. She suggests that if the jury had the opportunity to hear Grignon's testimony, Officer Waupekenay's motives for targeting Williamson for a controlled buy

would be demonstrated and his bias against her revealed.

The Sixth Amendment Compulsory Process Clause guarantees to a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI; *see also United States v. Harvey,* 117 F.3d 1044, 1047 (7th Cir.1997). However, a defendant's right to compulsory process is abridged only when a court denies the defendant an opportunity to secure the appearance at trial of a witness "whose testimony would have been relevant and material to the defense." *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *see also Smith v. Kolb,* 950 F.2d 437, 440 (7th Cir.1991) ("To establish a violation of the Sixth Amendment right to present a defense, a defendant must show more than that he was merely deprived of the testimony of a witness: 'he must at least make some plausible showing of how [the] testimony would have been *both material and favorable to his defense.'* "). Similarly, although a defendant's due process right to a fundamentally fair trial depends on her ability to present exculpatory evidence, this evidence also must be relevant. *See Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). In this case, the district court found that Grignon's testimony, which Williamson argued showed evidence of bias in Waupekenay, instead related only to a collateral matter and, as such, was not relevant. Thus, we review the district court's refusal to admit this testimony for abuse of discretion. *See United States v. Payne,* 102 F.3d 289, 294 (7th Cir.1997).

Williamson's two best arguments for admission of Grignons testimony are that it would have impeached Waupekenay by showing specific acts of dishonest conduct or by demonstrating Waupekenay's bias against her, but neither of these arguments succeeds. Grignon's testimony, if truthful, would demonstrate that Waupekenay engaged in a specific act of dishonesty, i.e. suborning her perjury. However,

Williamson admits that Rule 608(b) of the Federal Rules of Evidence would preclude her from using the testimony in order to impeach Officer Waupekenay in this way, because Rule 608(b) prohibits extrinsic evidence as proof of specific conduct of a witness. *See* Fed.R.Evid. 608(b); *see also Payne,* 102 F.3d at 294. However, Williamson claims that the testimony should have been admitted to demonstrate Waupekenay's motives for targeting her in a controlled buy operation. Williamson was allowed to cross-examine Waupekenay about his possible biases or motives for targeting Williamson by questioning him about his drunken conduct at Dee's Rainbow Bar.

Williamson contends that Grignon's testimony would have corroborated her theory of Waupekenay's bias against her. However, the district court found Grignon's testimony to impeach by contradiction on a "collateral or irrelevant" matter, which is impermissible. *See United States v. Kozinski,* 16 F.3d 795, 806 (7th Cir.1994). A matter is collateral if it "could not have been introduced into evidence for any purpose other than contradiction." *United States v. Jarrett,* 705 F.2d 198, 207 (7th Cir.1983). Thus, for Grignon's testimony to be admissible, it must have been relevant to show Waupekenay's bias. Waupekenay certainly might have harbored bias against Williamson because of her reaction to his drunken conduct. However, Waupekenay's attempts to conceal his own behavior do not demonstrate bias. Grignon's testimony would tend to impeach Waupekenay's testimony as to whether he asked Grignon to lie about the events that occurred at Dee's Rainbow Bar and would affect Waupekenay's credibility as a witness. But Grignon's testimony does not provide any basis for a jury reasonably to infer that Waupekenay was biased against Williamson, because according to Grignon, Waupekenay never discussed any bias against Williamson with her. For this reason, we agree with the district court that Grignon's

testimony addressed only collateral matters and, for that reason, was not relevant. We find that the district court did not abuse its discretion in refusing to admit Marilyn Grignon's testimony.

### III. CONCLUSION

We find that the district court did not abuse its discretion in limiting the scope of the cross-examination of Wendy Waubanascum. We also find that the district court correctly refused to admit the testimony of Marilyn Grignon because it found that the testimony tended to impeach only on a collateral matter. For these reasons, the decisions of the district court are AFFIRMED.