In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3526

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOEL RIVAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 617 — **Amy J. St. Eve**, *Judge*.

ARGUED SEPTEMBER 16, 2015 — DECIDED AUGUST 5, 2016

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. A fingerprint examiner testified at trial that he was certain the partial fingerprint found on a 9 millimeter handgun belonged to Joel Rivas. Rivas wanted to cast doubt on the reliability of the method the examiner used by questioning him about an unrelated case in which the FBI

used the same method to erroneously conclude that the fingerprint of an Oregon lawyer was on a bag containing detonating devices used in terrorist bombings in 2004 in Spain. The district court did not infringe Rivas's rights under the Confrontation Clause when it ruled the defense could not refer to that case when cross-examining the fingerprint examiner. The examiner in Rivas's case was not involved in the other case, and the two cases were wholly unrelated, so the testimony was of only marginal relevance. Rivas's counsel was not prevented from questioning the examiner on the reliability of the fingerprint identification method, and counsel pursued multiple lines of cross-examination in an attempt to convince the jury that the government had not proven that the fingerprint belonged to Rivas. Since he was given ample opportunity to cross examine the witness, Rivas's Sixth Amendment right to confrontation was not violated. We affirm his conviction.

## I. BACKGROUND

Police officers executed a search warrant on a storage unit that Israel Miranda rented in Elgin, Illinois. Miranda and Rivas often worked on cars at the storage unit. In fact, the storage unit's owner said that he saw Rivas at the storage unit "just about every day" until the search warrant was executed.

The officers executing the warrant found cocaine, marijuana, and drug paraphernalia inside the unit. They also found two guns, a loaded 9 millimeter handgun in a desk drawer and a loaded .357 handgun in a toolbox. The officers also found Rivas's Rock Valley College student handbook, invoices from Rivas's mechanic business, and a Western Union receipt tied to him.

Miranda was arrested that day. He called Rivas from jail and, in a call that the jail recorded, told Rivas the police were looking for him. Miranda also assured Rivas that he would not say anything about Rivas to the police. Nonetheless, Rivas was eventually arrested. He was charged with conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; possession with the intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 921(g)(1).

At Rivas's trial, the government's witnesses included the storage unit's owner, two of Rivas's former drug customers, law enforcement personnel, and Edward Rottman, a fingerprint examiner. Rottman had been working as a forensic scientist for the Illinois State Police for approximately twenty-three years at the time of trial and had identified persons through fingerprint comparison tens of thousands of times. He explained that he compares fingerprints using the ACE-V side-by-side comparison technique. ("ACE-V" is an acronym for Analysis, Comparison, Evaluation, and Verification and is "the standard method for determining whether two fingerprints are from the same person." *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013) (describing method in detail); *see also United States v. Saunders,* 2016 WL 3213039, at *5 (7th Cir. 2016)).

Rottman explained that when comparing prints, he places the latent (unidentified) print next to a known print. Looking through a magnifying glass, he looks at the latent print for a point or group of points that stand out and then looks to see

whether the same point or points are present in the known print. Rottman continues to look back and forth between the two prints, identifying individual points or characteristics as well as the overall flow of the ridges and pattern and shapes, until he arrives at a conclusion. After this explanation, the government asked that Rottman be permitted to offer expert testimony pursuant to Federal Rule of Evidence 702 in the area of fingerprints and fingerprint evidence. The defense responded that it had no objection other than to make the testimony subject to cross-examination.

Specific to Rivas's case, Rottman testified that he developed a latent partial print from the 9 millimeter handgun found in the storage unit, photographed the print, and then lifted it. He then conducted a side-by-side, ACE-V comparison of the latent print to a known partial fingerprint of Rivas. After doing so, Rottman concluded that the latent partial print on the gun belonged to Rivas. Rottman showed the jury images of both the latent and known prints and walked the jury through ten points of comparison. He testified that he had found seventeen points of comparison between the latent and known partial prints and that they made him "totally certain" that the partial print on the gun was from Rivas.

The defense cross-examined Rottman regarding his development of the partial fingerprint from the gun and also about his side-by-side comparison. During the cross-examination, Rottman acknowledged the conclusion of a 2009 National Academy of Sciences report published by the National Research Council[1] that it was not possible to have a zero error

---

[1]National Research Council, *Strengthening Forensic Science in the United States: A Path Forward* (2009), http://www.nap.edu/catalog/12589.

rate in fingerprint analysis. Rottman further acknowledged that he was not aware of any studies validating the reliability of the ACE-V method. The defense also attempted to cross-examine Rottman regarding a different fingerprint examiner's conclusion in a separate case, that of Brandon Mayfield. The government objected, and the trial court sustained the objection. As a result, Rivas was not allowed to introduce evidence of Mayfield's erroneous identification through the ACE-V method of fingerprint analysis.

The jury convicted Rivas on all counts. He appeals.

## II. ANALYSIS

Rivas does not contend in this appeal that the government's fingerprint evidence or the testimony from its fingerprint expert should have been excluded. Rather, Rivas's only argument is that his rights under the Confrontation Clause of the Sixth Amendment were violated when the district court did not allow him to cross-examine the government's fingerprint expert regarding the misidentification of a suspect in an unrelated case. He maintains that in light of the expert's testimony that after using the ACE-V method he was certain the latent fingerprint belonged to Rivas, he should have been allowed to inform the jury of a misidentification after the same method was used. We generally review a district court's limitation on the scope of cross-examination for an abuse of discretion. *United States v. Faruki*, 803 F.3d 847, 856 (7th Cir. 2015). When the limitation directly implicates the Sixth Amendment right to confrontation, our review is de novo. *Id.*

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him, and it includes the right to cross-examine those

witnesses. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). A Sixth Amendment violation occurs when cross-examination limitations prevent the defendant from exposing a witness's bias or motivation to lie, or when they deny the defendant the "opportunity to elicit testimony that would be 'relevant and material to the defense.'" *United States v. Vasquez*, 635 F.3d 889, 895 (quoting *United States v. Williamson*, 202 F.3d 974, 979 (7th Cir. 2000)). But that does not mean a judge cannot impose any limits on cross-examination. Trial judges retain "wide latitude" to impose reasonable limits on cross-examination based on concern about matters including harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant, all without running afoul of the Confrontation Clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Here, Rivas sought to cross-examine Rottman, the government's fingerprint analyst, about the misidentification of Brandon Mayfield. Following train bombings in 2004 that killed 191 people in Madrid, Spain, the FBI identified as Mayfield's the fingerprint on a bag of detonators in a van used by the bombers. Mayfield was an attorney living in Oregon and insisted he had no involvement in the Spain bombings and that he had not left the country in a decade, but he was arrested as a material witness and placed in custody. About two weeks later, the Spanish National Police informed the FBI that it had identified another person as the source of the fingerprint on the bag. The FBI examined that person's fingerprints, it withdrew its identification of Mayfield, and the court dismissed the material witness proceeding. The FBI later issued a formal apology to Mayfield and reached a financial settlement. The United States Department of Justice's Office of the Inspector General published an extensive report examining

the misidentification, investigation, and detention of Mayfield, including flaws in the FBI examiners' use of the ACE-V method in the case. Office of the Inspector General Oversight and Review Division, *A Review of the FBI's Handling of the Brandon Mayfield Case* (March 2006), https://oij.justice.gov/special/s0601/final.pdf.

In Rivas's case, when the government objected on relevance grounds to the defense counsel's attempt to question Rottman about the Mayfield misidentification, the district court sustained the objection. After a discussion at sidebar, the judge sustained the objection, explaining,

> It is fine to raise the studies to challenge him, but to raise the fingerprinting from another case, that there is no evidence on, just creates a whole sideshow on the fingerprinting in that particular case and what methods were used and how it was done and who conducted it … . This is just a sideshow and it is going to go and delay this trial. Again, you can use the scientific studies to cross-examine him; but, to start going into the merits of testing done in another case is not appropriate here.

We agree with the government that there was no Sixth Amendment violation (or abuse of discretion, to the extent Rivas argues it) in this ruling. The FBI had used the ACE-V method of fingerprint analysis to identify Mayfield, the same method used by Rottman in this case to identify Rivas, but that is all the cases have in common. Rottman was not the person who conducted the analysis in the Mayfield case. Rottman was not involved in the Mayfield case in any way, and the separate Mayfield case has no relationship to this case.

Significantly, the district court did not prevent Rivas from cross-examining Rottman about the reliability of the ACE-V methodology, which would have been a principal reason for questioning Rottman about the Mayfield case. Rivas's counsel was allowed to use, and used repeatedly, conclusions from the National Academy of Sciences regarding the fallibility of fingerprint analysis. In light of Rottman's testimony that the latent fingerprint he examined could have only been made by Rivas, defense counsel asked Rottman whether he was familiar with the report by the National Academy of Sciences regarding fingerprint analysis, and in particular its statement that claims that these analyses have zero error rates are not scientifically plausible. Rottman acknowledged he was aware of this conclusion. Rottman also acknowledged that although the ACE-V method was widely used in the fingerprint examining community, he was not aware of studies that had validated the ACE-V method.

The defense counsel cross-examined Rottman on other matters as well. Rottman admitted under cross-examination that he had only compared the latent print found on the gun with a known print from Rivas, and that he had not compared it with any other known prints. Rottman also acknowledged that it is possible that a very small part of a fingerprint on one person could be similar to a very small portion of a fingerprint on another person.

Here, the limitation on cross-examination did not prevent the jury from fully evaluating Rottman's testimony. "The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The judge's

ruling in this case only limited the defense's ability to add additional detail about the potential fallibility of the ACE-V method, and the Mayfield case was of at best marginal relevance. *See United States v. Nelson*, 39 F.3d 705, 708 (7th Cir. 1994) (finding no Sixth Amendment violation, stating "limitations on cross-examination did not deny the defendants the opportunity to *establish* that the witnesses may have had a motive to lie; rather, the limitations denied them the opportunity to *add extra detail* to that motive"). Rivas's defense counsel used the testimony she elicited from Rottman during her cross-examination to argue in closing argument that two partial fingerprints from two different people could incorrectly result in a match using the ACE-V method, and the specific details of the Mayfield case were not needed to make that point.

Finally, we note that Rivas's attempt to find support for his position from *United States v. Vest*, 116 F.3d 1179 (7th Cir. 1997), misses the mark. He asserts in his brief that in *Vest* we allowed the government to cross-examine the defense expert regarding opinions drawn by other experts. But there is no discussion of cross-examination of a defense expert in *Vest*. We addressed time limits placed on the cross-examination of government experts and the defense's use of certain records during the cross-examination of government experts and found no Sixth Amendment violation in either. *See id.* at 1183–88. *Vest* does not help Rivas.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.