In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1453

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL PERRYMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cr-00317 — **James P. Hanlon**, *Judge.*

ARGUED NOVEMBER 1, 2021 — DECIDED DECEMBER 16, 2021

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Law enforcement agents searched
Michael Perryman's home and found drugs, baggies, a digital
scale, and a loaded AR-15 rifle. Perryman was then charged
with drug and firearm offenses. At trial, he sought to impeach
an officer's truthfulness by introducing a fifteen-year-old rep-
rimand regarding an unrelated case, which the district court
precluded him from doing. A jury convicted him on all
counts. On appeal, Perryman maintains that the evidence was

insufficient to convict him on any count and that the district court's exclusion of evidence reporting an incident unrelated to the case violated the Confrontation Clause. We reject both arguments and affirm the conviction.

## I. Background

In Spring 2018, as part of a large antidrug operation, the Drug Enforcement Administration ("DEA") obtained a search warrant for Perryman's home in Indianapolis. A team of federal and local law enforcement agents arrived at the property, just as Perryman was departing in his car. After stopping Perryman and reading him his *Miranda* rights, the agents searched the home, which had a master suite that consisted of a bedroom, bathroom, and a large closet accessible only through the bathroom. In the master bathroom, on a shelf on top of the vanity next to the closet door, they found fentanyl, baggies, and a digital scale. In the closet, there was a loaded AR-15 rifle, three to four steps away from the fentanyl, along with men's shoes and clothes.

Perryman, with the agents' permission, called his then-girlfriend, Rasheema Moore, who arrived soon after. Although she lived elsewhere, she had signed the lease for the home. Moore said that the drugs, money, and gun were not hers.

The agents read Perryman his *Miranda* rights for a second time after the search, and he agreed to talk. He admitted that the drugs were his, then provided the agents with the name of his drug supplier. He did not, however, claim ownership of the gun. The rifle "belonged to a girlfriend," Maurita Thomas, who had originally bought the weapon with Perryman at a gun show. The pair had lived together at different

places over the years in homes leased under Thomas's name. And they occasionally went shooting together. When Perryman relocated to the home that agents would later search, the rifle went with him. The two, though, spoke regularly. During one post-arrest conversation, Perryman asked Thomas to lie about the gun. He wanted her to say that she took the weapon from one house to the other. She initially complied, telling an investigator and defense counsel that she moved the weapon. But once under oath, she admitted those statements were untrue; she lied "to protect Michael."

Perryman was indicted on charges of possessing fentanyl with intent to distribute, 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1), and possessing a firearm while a convicted felon, *Id.* § 922(g)(1).

Prior to trial, the government moved in limine to exclude questioning concerning the disciplinary record of Indianapolis Metropolitan Police Department Sergeant Clifton Jones, who participated in the search of Perryman's home. The disciplinary offense stemmed from a complaint about Officer Jones's involvement in an unrelated investigation.[1] The Disciplinary Board issued a "Written Reprimand" based on its review. Perryman wished to impeach Officer Jones's credibility using this incident and focused his arguments on evidentiary points, adding in one sentence though that "[he] should be able to exercise his rights under the Confrontation Clause." The district court, ruling only on the evidentiary question, granted the government's motion in a sealed entry,

---

[1] Like the district court below, we decline to elaborate upon the details out of respect for Officer Jones's privacy.

concluding that any potential probative value of the evidence was substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusing the issues.

The trial lasted two days. Near the end of the trial, Perryman again sought to impeach Officer Jones with the disputed evidence. The government objected, and the district court excluded the evidence. After the close of the government's case, Perryman moved for acquittal under Rule 29, which the district court denied. The jury convicted him on all counts. The district court sentenced Perryman to 228 months in prison, followed by five years of supervised release.

## II. Discussion

Perryman argues that the evidence was insufficient to convict him on any count and that excluding Officer Jones's disciplinary action violated the Confrontation Clause.[2] We address each argument in turn.

### A. Sufficiency of the Evidence

We review the denial of a motion for acquittal under Rule 29 de novo. *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017). A jury verdict will only be overturned "if, after viewing the facts in the light most favorable to the government, there was insufficient evidence to convict." *United States v. Jett*, 908 F.3d 252, 273 (7th Cir. 2018). The defendant bears the burden of demonstrating that no reasonable jury could find guilt beyond a reasonable doubt. *United States v. Tantchev*, 916 F.3d

---

[2] Perryman filed a pro se brief to raise additional concerns about his sentencing. We have discretion to reject a pro se brief without considering the issues argued when a defendant is represented by counsel, *see United States v. Hunter*, 932 F.3d 610, 620 (7th Cir. 2019), and choose to do so here.

645, 650 (7th Cir. 2019); *see also United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010) ("Such a challenge leads to a '"reversal only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt."'" (quoting *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009))). We have described this challenge for the defendant as an "uphill battle," *United States v. Christian*, 342 F.3d 744, 750 (7th Cir. 2003), a "momentous task," *United States v. Lawrence*, 788 F.3d 234, 239 (7th Cir. 2015), a "'heavy' burden," *Jett*, 908 F.3d at 273 (citation omitted), and a "nearly insurmountable" hurdle, *id.*, one which Perryman cannot overcome for any count.

### 1. Possession of a Controlled Substance

Section 841(a)(1) criminalizes the possession of a controlled substance, such as fentanyl, with the intent to distribute. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(2). To convict, the government must prove that the defendant knowingly possessed fentanyl with the intent to distribute and knew that fentanyl was a controlled substance. *See, e.g.*, *United States v. Brown*, 973 F.3d 667, 697–98 (7th Cir. 2020) (marijuana); *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008) (cocaine). Perryman only disputes whether he possessed the fentanyl. For § 841(a)(1), possession can be either actual or constructive. *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012). In this case, the government relies on constructive possession.

"Constructive possession," we have said, "is a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the object." *Id.* The defendant must have both the "power and intention to exercise dominion and control over the object, either directly or through others," requiring some

connection between the defendant and the illegal drugs. *Id.* That connection can come "in one of two ways." *Id.* The first way is where the defendant alone maintains "'exclusive control' over the property where the contraband was discovered," which allows the logical inference that the defendant possesses the drugs located there. *Id.* (quoting *United States v. Castillo*, 406 F.3d 806, 812 (7th Cir. 2005)). The second way of showing constructive possession, absent the defendant exercising exclusive control over the property, requires "'a substantial connection' to the location where contraband was seized," one "sufficient to establish the nexus between that person and [any contraband]." *United States v. Morris*, 576 F.3d 661, 667 (7th Cir. 2009). In either case, the government can show constructive possession through direct or circumstantial evidence. *Lawrence*, 788 F.3d at 240.

Here, a reasonable jury could easily conclude that Perryman constructively possessed the fentanyl by his exclusive control over the drugs. Perryman confessed that the drugs were his, telling the agents immediately that the drugs belonged to him and even providing them with the name of his drug supplier. Perryman claims that this confession was false. But the government offered uncontroverted testimony about its veracity from the task force officer who interviewed Perryman after the search and heard his confession. The jury was entitled to credit that testimony in arriving at its verdict. Perryman even concedes, in his brief before this Court, that "[t]he jury could've relied on the testimony from [the testifying officer] that Mr. Perryman stated that everything in the condo is his except the rifle."

Additional evidence further links Perryman with the drugs. The police found the fentanyl in the home where

Perryman resided by himself, paid the bills, and was seen exiting when agents arrived. *See Griffin*, 684 F.3d at 695 ("Exclusive control over the premises allows the jury to infer the knowledge and intent to control objects within those premises … ."). The drugs were in the master suite, where Perryman slept, by a closet filled with men's clothes. Perryman submits that because other people have stayed over, even leaving toothbrushes and feminine hygiene products behind, he could not have been the true possessor. But a person can still constructively possess drugs while living in a space visited by others. Whether a person maintains "exclusive control" over a residence generally turns on the number of live-in residents—requiring only one—not the number of visitors, the number of signees on the lease, or even the number of people with keys to the home. *Cf. Lawrence*, 788 F.3d at 240 ("If a defendant *lives alone* in an apartment and a search reveals contraband, proving constructive possession is relatively easy." (emphasis added)). And both Moore and Thomas, the two most frequent visitors, denied owning the drugs. *Cf. United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 876 (7th Cir. 2016) ("[W]e afford great deference to the jury's factual findings and credibility determinations."). Therefore, the evidence demonstrating Perryman's possession of the drugs, combined with his confession, dooms this challenge.

### 2. In Furtherance of a Drug Trafficking Crime

Under 18 U.S.C. § 924(c)(1)(A), a defendant cannot possess a weapon "in furtherance of" a "drug trafficking crime." *See also United States v. Johnson*, 916 F.3d 579, 588–89 (7th Cir. 2019). Perryman argues that, assuming he committed a drug trafficking crime and possessed the firearm located in his

closet, the weapon was not used "in furtherance" of any drug crime.

The "'in furtherance of" element is fact intensive. *United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005). Courts frequently "list factors that seem relevant and leave it to the trier of fact to apply them to the facts of the case at hand." *United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013). These factors include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)). No single factor determines the outcome; this inquiry is holistic. *See id.* ("It can be easier to determine 'furtherance' by a holistic analysis than by dissecting the issue into parts … .").

Here, sufficient evidence establishes that Perryman possessed the gun "in furtherance" of his drug crime. The gun was located three to four steps away from large quantities of fentanyl, in the master closet, accessible only by going through the drug-filled master bathroom, and propped up against the wall, not locked away or hidden. Expert testimony at trial explained that such close proximity suggests that the gun was used to protect the drugs. Moreover, the gun was no ordinary weapon; it was a *loaded* AR-15 rifle, a weapon outlawed in several states, which Perryman could not own under federal law. Together, this evidence more than supports the jury's verdict.

**3. Felon in Possession of a Firearm**

Federal law prohibits certain felons from possessing a firearm. 18 U.S.C. § 922(g)(1). The government must establish four elements to prove a defendant guilty of this charge: (1) the defendant was convicted of a crime punishable by more than one year; (2) the defendant knowingly possessed a firearm; (3) the defendant knew of his felon status; and (4) the gun possessed by the felon had been in or affected interstate commerce. *Id.*; *Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019); *see also United States v. Parsons*, 946 F.3d 1011, 1014 (8th Cir. 2020). Perryman does not contest the first, third, and fourth elements. He contends only that the government failed to meet its burden for the second element, possession of a firearm.

Section 922(g) "covers possession in every form," whether actual or constructive.[3] *Henderson v. United States*, 575 U.S. 622, 626 (2015). As explained above, constructive possession "is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *Id.* A jury can infer constructive possession when the defendant exercises exclusive control over the premises. *Griffin*, 684 F.3d at 695 (describing the two forms of constructive possession, "exclusive control" being the first and more straightforward); *see also United States v. Davis*, 896 F.3d 784, 791 (7th Cir. 2018). A person who owns a home controls the objects within, whether drugs or illegal firearms. *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005). Third-party access to a home "does not negate the inference that [the defendant]

---

[3] We need not consider the government's argument that Perryman actually possessed the rifle.

had access to the firearm as well." *United States v. Villasenor*, 664 F.3d 673, 681 (7th Cir. 2011).

Here, the evidence permitted a rational jury to find that Perryman constructively possessed the weapon discovered in his closet.[4] Perryman lived alone in the home where the police found the weapon and, thus, controlled the premises. While others may have had access, no one else resided there, so there was never joint ownership. And, as previously noted, when a defendant alone controls a property, a jury can reasonably assume that he controls the weapons present there. *Caldwell*, 423 F.3d at 758 (holding that where the defendant resides in the home, there "is sufficient [evidence] to establish that he had constructive possession of the firearms seized there"); *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir. 1995) ("'Constructive possession can be established by a showing that the firearm was seized at the defendant's residence.'" (quoting *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993))). Moreover, the weapon was in Perryman's closet, by his clothes, feet away from the drugs that he confessed to own, and in the same master suite where he slept every night. Testimony at trial revealed that Perryman brought the rifle to the house and would later ask Thomas, a previous girlfriend, to lie about that fact.

Nor does ultimate ownership of the gun matter, as Perryman contends. Owning an item is different than possessing it. *See Henderson*, 575 U.S. at 626 ("By its terms, § 922(g) does not

---

[4] Perryman concedes as much, "The facts may have led the jury to convict based on constructive possession and that Mr. Perryman has a substantial connection to the home." The concession aside, the record also supports the government's case.

prohibit a felon from *owning* firearms. Rather, it interferes with a single incident of ownership—one of the proverbial sticks in the bundle of property rights—by preventing the felon from knowingly *possessing* his (or another person's) guns."). Courts do not look to a weapon's paperwork. A defendant need only possess a gun to be found guilty under § 922(g)(1). *See United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009). Therefore, viewed in the light most favorable to the government, the evidence was more than sufficient to enable a rational jury to find that Perryman constructively possessed the AR-15, so his sufficiency claim fails.

## B. The Confrontation Clause

We review a direct implication of the constitutional right to confrontation de novo.[5] *United States v. Rivas*, 831 F.3d 931, 934 (7th Cir. 2016). Absent any direct implication though, we review a limitation on cross-examination for abuse of discretion. *United States v. Carson*, 870 F.3d 584, 597 (7th Cir. 2017).

The Confrontation Clause protects the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront a witness also includes the right to cross-examine that person for any bias or motivation to lie. *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). If the defendant's cross-examination, however, does

---

[5] The government asserts that Perryman did not preserve this constitutional claim below, because he focused his challenge on evidentiary grounds. Perryman notes, however, that his memorandum in support of his motion to the district court stated that he "should be able to exercise his rights under the Confrontation Clause." We assume, without deciding, that his one-sentence reference preserved the issue under Federal Rule of Criminal Procedure 51(b).

not implicate a core confrontational value—exposing motivation, bias, or incentive to lie—then the constitutional concerns are diminished. *United States v. Hart*, 995 F.3d 584, 589 (7th Cir. 2021); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). District court judges otherwise "retain 'wide latitude' to impose reasonable limits on cross-examination based on concern about matters including harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant, all without running afoul of the Confrontation Clause." *Rivas*, 831 F.3d at 934 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Here, the proposed line of questioning into Officer Jones's unrelated disciplinary action did not implicate a core value of the Confrontation Clause. Contrary to Perryman's many assertions, Officer Jones's reprimand did not involve tampering with evidence. Rather, Officer Jones's participation in a police investigation fifteen years ago was questioned, which the Disciplinary Board decided warranted only a written warning. Perryman has not shown, nor could he, that this irrelevant and dated offense relates to his case. *See United States v. Clark*, 657 F.3d 578, 584 (7th Cir. 2011) (emphasizing that "the Confrontation Clause does not give a defendant a boundless right to impugn the credibility of a witness"). Officer Jones was not motivated to lie or harbor any bias against someone unconnected to his disciplinary incident, and Perryman was otherwise able to extensively cross-examine Officer Jones about his role in the investigation. *See, e.g.*, *Hart*, 995 F.3d at 589–90 (noting that the defendant had "ample opportunity to impeach or discredit" the witness); *Carson*, 870 F.3d at 597 (holding that

there was no error where the defendant had ample opportunity to expose motivations); *Clark*, 657 F.3d at 584 (rejecting "barely relevant" and "highly inflammatory" questioning).

Given then that a core confrontational value was not implicated, the district court properly exercised its "wide latitude" under the Confrontation Clause to exclude the evidence. *Van Arsdall*, 475 U.S. at 679; *see also Hart*, 995 F.3d at 589 (stating that when the "defendant's argument *indirectly* implicates a core value," we ask only whether the district court abused its discretion under the Confrontation Clause in limiting a defendant's cross-examination). Introducing the minor, fifteen-year-old reprimand, at best, tangentially related to truthfulness and would likely have prejudiced or confused the jury. *See United States v. Recendiz*, 557 F.3d 511, 530–31 (7th Cir. 2009). And again, Perryman already had a reasonable opportunity to cross-examine Officer Jones. Perryman's constitutional rights, therefore, were not violated.

### III. Conclusion

For these reasons, we affirm the conviction.